CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

JEFF MITCHELL (CABN 236225)
Chief, Criminal Division

MATTHEW EVANS (CABN 347946)
KEVIN YEH (CABN 314079)
Assistant United States Attorneys

450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495
(415) 436-7200
kevin.yeh@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>RESHMA KAMATH,<br><br>Defendant. | Case No. 3:25-cr-00371-JAM<br><br>**UNITED STATES' MOTION FOR REMAND**<br><br>Hearing Date: October 29, 2026<br>Hearing Time: 11:00 a.m.<br>Courtroom: A, 15th Floor<br><br>Hon. Alex G. Tse |

Despite the fact that one condition of her pretrial release is that she "must not harass, threaten, intimidate, . . . or retaliate against any witness, victim, . . . or officer of the Court," defendant Reshma Kamath is engaged in a relentless online campaign to do precisely those things. Since at least July 2026, defendant Kamath has been prolifically publishing harassing, racist, and inflammatory posts onto her Facebook account—posts that identify victims, witnesses, case agents, judges, prosecutors, and others ***by name—as well as posting images of victims and witnesses taken from discovery***. Just last month, Kamath posted that she will "ensure" that the four officers who arrested her on the charges in this case (all of them named) will have their arms and genitals "chopped off." And as Pretrial Services has documented, Kamath previously said to someone, "If I had a gun, I would shoot you . . . ." ECF 19.

As a former practicing attorney, Kamath is well aware of the import of court orders, which

include conditions of release. Her repeated violations of her own bond conditions—as well as the unambiguously improper nature of her conduct—shows that she has not and is unlikely to follow the Court's orders. Furthermore, her alarming and abusive posts—including against the very people she is charged with physically assaulting—confirm the danger she poses to the community. Even assuming they do not rise to the level of threats (which they very well may), her publicly available posts were clearly made with the intention of inviting action by others against her targets, including victims, witnesses, and officers in this case. Otherwise, there would be no purpose in posting photos of them.

Because Kamath has shown that no conditions will ensure the safety of the community, the government respectfully moves that Kamath be remanded into custody pending trial.

## BACKGROUND

### I. Procedural History

On November 5, 2025, Kamath was indicted with two counts of violating 49 U.S.C. § 46504 – Interference with Flight Crew Members and Attendants; one count of violating 18 U.S.C. § 111(a) – Assaulting, Resisting, or Impeding Certain Officers or Employees; and one count of violating 49 U.S.C. § 46503 – Interference with Security Screening Personnel. ECF 1. On November 13, 2025, Kamath was granted pretrial release. ECF 4. One standard condition of release imposed upon her is that she "must not harass, threaten, intimidate, . . . or retaliate against any witness, victim, . . . or officer of the Court."

In February 2026, Kamath's Pretrial Services officer cited Kamath for being arrested after she allegedly "initiated a physical altercation following a verbal dispute." ECF 19. Kamath also purportedly said to the victim, "If I had a gun, I would shoot you . . . ." *Id.* Pretrial Services thus recommended that she be remanded into custody. ECF 22. The Hon. Laurel Beeler, United States Magistrate Judge, permitted Kamath to remain on pretrial release with the added condition that she enter mental health treatment. *Id.*

On September 11, 2026, Pretrial Services filed a violation memorandum due to Kamath's missing a mental counseling session and a check-in with her Pretrial Services officer. Judge Beeler set a hearing on the violation for September 24, 2026, which was continued until October 29, 2026.

//

## II. Kamath's Harassing and Threatening Social Media Posts

In August 2026, agents became aware of a long and repeated series of disturbing social media posts that Kamath made on Facebook stretching back to at least July 2026. These posts, which remain available for public viewing on her Facebook, not only berated individuals involved in her case, but also disclosed the names of witnesses, victims, and investigating officers, as well as their occupations.[1]

- "A list of untrained, violent, incompetent and mostly fat male officers in San Francisco and Bay Area (what law enforcement is fat – they get paid to work out and they're not women who need fat for birth and menstruation) harassing a young Indian woman in America . . . [Arresting officer's name] (This guy is a fiend for touching a woman's butt repeatedly. . . . I don't know whom he has assaulted in the past but I want to find out.) [Victim officer's name] (fat, ugly slob loves light-skinned women only)." (July 10, 2026 – Exhibit 1)

- "LIST OF AIR INDIA PERPETRATORS THAT MUST BE BANNED FROM AMERICA. THIS IS A NATIONAL SECURITY CONCERN TO LET SUCH PEOPLE INTO AMERICA. . . . Flight Attendant [victim's name] . . . Flight Attendant [victim's name] . . . Flight Attendant [victim's name] . . . ." (July 11, 2026 – Exhibit 2)

- "Chinese and Vietnamese people play a lot of games at work. They're racist, canniving [sic] and sexually abusive (as Asian men are.) . . . [FBI agent's name] then broke and entered my House, and brushed his fingers on my chest. . . . [FBI agent's name] is a criminal who needs to be deported to China." (July 30, 2026 – Exhibit 3)

- "I have reported some illegal Gujaratis ([names]), Chinese, Vietnamese ([FBI agent and victim CBP agent's names]), and African-Americans to ICE. Who else wants to be reported?" (August 3, 2026 – Exhibit 4)

- "Deport communist racist [FBI agent's name] – he is notorious for assaulting and harassing women. He is majorly incompetent and delusional." (August 4, 2026 – Exhibit 5)

- "[T]he attack on me was San Francisco liberal DSA Communist threat from the anti-Trump judges, some even lesbian, from the Communist countries, China ([FBI agent's name]) . . . Soviet Communist Armenia ([U.S. Attorney] Missakian, [AUSA] Kassabian- they look Caucasian so very dangerous), Maoist Northern India ([victim's name]). You see the ugly communists have non-English speaking upbringing with minimal broken English. They need to be prosecuted – they've corrupted San Francisco courts with the lineage of anti-Trump judges, such as Alsup, Gonzalez [sic], Donato, Kim, Beeler, Cisneros, to name a few." (August 5, 2026 – Exhibit 6)

- "What're the liberal SF FBI Commie [agent's name] and Armenian refugee [U.S. Attorney] Missakian concocting now. Disgusting lesbian flight attendants of Air India [victim's name] and [victim's name] attempted to kiss and assault me on the plane from Mumbai to Delhi to SFO." (August 5, 2026 – Exhibit 7)

---

[1] Due to the naming and posting of images of victims in this case, the government has filed its exhibits under seal. All exhibits referenced herein are attached to the Declaration of Kevin Yeh in Support of United States' Motion for Remand.

- "What a waste of American tax-payer dollars, even mine, for the prosecution of a federal case based on a delusional, mental, molester of a Chinese investigative bureau agent, [Agent's first name] sh*t [Agent's last name], and that of the two lying, scheming marijana-smoking women from Air India, [two victims' names]." (August 11, 2026 – Exhibit 8)

- [VICTIM'S NAME]: Lying to men, luring men, and fooling men. This is [Victim's name], a deceptive, scheming woman." (August 11, 2026—Exhibit 9)

  - [Kamath then posts an image from a video, and the video itself, that were produced in discovery and depict the victim.] (August 11, 2026—Exhibit 9A)

- "THIS IS ONE OF THE ILLEGAL IMMIGRANTS FROM THE PHILLIPINES WHO VIOLENTLY AND BRUTALLY ATTACKED ME. ILLEGAL MONSTER, [Victim CBP agent's name]. LOOK AT HOW UGLY AND VICIOUS OF A MONSTER HE IS. DO YOU THINK HE UNDERSTANDS ENGLISH PROPERLY?" (August 12, 2026—Exhibit 10)

  - [Kamath then posts an image of the victim CBP officer produced in discovery.] [(August 12, 2026 –Exhibit 10A)

- "Air India Delhi Monkeys and SFO Chimps. Need to check the horrific liar, captain [Victim's name] and his accomplices, [Victim's name] and [Victim's name], what kind of weed and drug they were high on." (August 12, 2026 – Exhibit 11)

These posts are having what is presumably their intended effect: Kamath's victims have reached out to the government, concerned about her posts, about which they independently learned. Specifically, on August 17, 2026, the government was contacted by representatives from Air India expressing alarm and fear regarding the contents on Kamath's social media posts.

Kamath's posts have continued and appear increasingly targeted toward members of law enforcement and judicial officers who are connected to the case.

- "This is why I think SF FBI SAs [two FBI agents names] are illegal and concocting a story: Neither racist took a real-time video and/or picture of the Delhi perpetrators. Probably because [FBI Agents listed] were getting paid in kickbacks from Air India for the crooked Captains and Attendants to Smuggle drugs to and from Delhi to SFO. One Captain got caught because of me. More to go." (September 22, 2026—Exhibit 12)

- "Where is the apology of the San Francisco FBI Special Agent [Name]…? Why he can't apologize to brown, tanned women with his big ego and small penis? Does he only know to molest an innocent woman inside my House?...Third-rate trash. What kind of favors is Racist [FBI agent name] returning to the liberal court that is anti-Trump at the California Northern District for William Haskell Alsup and Yvonne Gonzalez [sic] Rogers? Is Racist [FBI Agent name] a Chinese mole? A spy?…" (September 24, 2026—Exhibit 13)_

- "[FBI agent name] is a Chinese monster in the FBI who lets go of Chinese people, but when Indian American women with big breasts don't care for him, he falsely indicts making up fake stories, then breaks and enters, to brush his fingers on their breasts when handcuffed. [FBI agent name] is a Chinese Pedophile, Sex Deprived Monster. (October 7, 2026—Exhibit 14)

- I wonder how many of these Chinese massage parlors and Chinese Madame brothels, [FBI Agent Name and title] has visited over the course of his life? Did he lose his virginity there, thus, he molests women with handcuffs on like a fetish…Why did a Special Agent of the FBI [Agent full name] headquartered in San Francisco, fluent in Cantonese or Mandarin, not know about them all these years? What about Phong Wang and the rest of the Asian judges who're in the San Francisco Bay Area, did they frequent the Chinese prostitute centers? How did they not know?" (October 8, 2026—Exhibit 15)

In addition to the myriad accusations and conspiratorial claims, Kamath's posts contained threats, curses, and—most disturbingly so—fantasies of sexual assault and violence perpetrated against the children and grandchildren of law enforcement, witnesses, and officers of the court connected to this matter.

- "I hope in the future the Mexican police officers in California harass and attack the kids of [FBI Agent and other officers' and witness' names]… (September 9, 2026—Exhibit 16)

- "This is why I do daily public broadcasts on social media to protect my life and ***so the courts/officers get scared***." (Emphasis added) (September 11, 2026—Exhibit 17, 17A)

- "If ever Islamic law gets implemented, I'll ensure [FBI agent's and other officers' names] and the ugly gang's arms and penises get chopped off for touching me." (September 14, 2026—Exhibit 18)

- "If there is no body cam, [FBI agent's and other witness' names] and rest of the illegal aliens, [Victim and witness' names], it is the fruit of the poisonous tree, and inadmissible as evidence under Fourth Amendment search and seizure rule. You racists. Go eff your sister, and after that each of your mothers, you lazy monsters from San Francisco." (September 17, 2026—Exhibit 19)

- "Dirty Judge James Donato, Monster William Haskell Alsup and ugly judges of California Northern District have displayed nothing but DUMOCRACTIC RACIAL MISOGYNY. I should have effigies in my yard for Halloween Display." (October 4, 2026—Exhibit 20)

- "When [name of FBI Agent's] son takes judge Laurel Beeler's grand daughter to one of the Chinese massage parlors, then we'll know who had psychosis and who needed a mental health evaluation. Probably Beeler." (October 6, 2026—Exhibit 21)

- "When that Latino cop bangs his daughter against the wall, twists her arm and cuffs her to throw her in the police vehicle, I hope the body cam is on for memory. I hope some random South-east Asian cop with some Arab guys jump on, grab and [name of officer's] daughter to the back, and repeatedly touch her ass even when she says no. Same things you all did to me. That's the future." (October 6, 2026—Exhibit 22)

Kamath has also posted extensively about this case. These posts include case details, procedural posture, summaries of conversations with counsel, identities of witnesses, and other key facts that were obtained exclusively in discovery.

- "Judge Laurel Beeler is a delusional nut. This retard wanted to keep me in custody to protect my parents. The fool doesn't know I saved my parents' life and there is no one else to take care of them. The trash also, without any fact check, blindly believed something an unknown relative said. Meanwhile the felons of Air India are flying carelessly because of delusional judges such as Beeler and FBI retard [FBI agent name]. Now again she wants to place me in custody, the psychotic woman." (September 17, 2026—Exhibit 23)

- "The San Francisco FBI produces and submits FAKE documents to the grand jury. The discovery packet from the FBI/US prosecutor that I received has documents from someone with the name '[Witness Name]' alleging a driver's license that they attribute to my mom. My mom, [Mother's full name], has never had a driver's license in America, nor is our name remotely close to '[witness surname].' Literally anything about us is [FBI agent name]'s and Air India Delhi's fake story…You see fake stories the Chinese concoct, [FBI agent name], molester and manipulative story teller." (September 18, 2026—Exhibit 24)

- "Evil and Ugly Dumocrat Anti--Trump judge William Haskell Alsup is a failure. Ugly Alsup has white ass lickers all around him [Names of witnesses, agent, officers]. Alsup is actually very racist…Alsup is/was a trash judge, because the loser doesn't know Reshma Kamath has LITIGATION PRIVILEGE. Reshma Kamath shall be back as Judge pretty soon. Watch out everyone." (September 20, 2026—Exhibit 25)

- "I've told my federal public defender since March 2026 that I need to be in propria persona and he needs to withdraw from the case. After wasting so much time and not doing a lot of work since then on the main substantive case, now everyone is going to pretend like he is getting relieved from the case, not that I don't want him as an attorney. In setting the trial way too early, and the judge, Mendez lying…I further can't forgive the defender for keeping both my parents in the car without bringing them into the building because the judge may see it as theatrics. They said there was no wheel-chair in the federal building." (September 21, 2026—Exhibit 26)

- "Stupid Judge Laurel Beeler and pre-trial, the fools did not even discovery that I lived independently for years now. No one lives with me and no one has information about me. They love to concoct useless stories…" (September 24, 2026—Exhibit 27)

- "After the racist Latina from the California Oakland Northern District HARASSED me on September 11, 2026 with racist lies, today again, she has further harassed me without an order from a judge, trying to deem me crazy based on some unlicensed Latino student's report with factual inconsistencies that I complained about to the Board of Psychology." (October 15, 2026—Exhibit 28)

Finally, Kamath's public commentary reflects a troubling attitude toward this case and, more importantly, her pre-trial obligations. She has boasted about her indictment and has publicly expressed disregard for the specific pretrial conditions and obligations she agreed to follow, specifically mental health counseling.

- "Ask me if the dumocratic counseling has helped me even a little: Nada, Zilch, Nothing. *What a waste of time and effort*." (Emphasis added) (September 10, 2026—Exhibit 29)

- "The low-lives don't know what indicted means. You know who gets indicted, people like mayors, governors, former FBI directors like Comey, and such people. Lot of fools

> are like 'indicted felon' which is an oxymoron. Lot of crazy, uneducated, English-as-a-second-language nuts around this place…Watch me get acquitted and each one of you who bothered me I'll out you in jail. I promise." (September 19, 2026—Exhibit 30).

## LEGAL STANDARD

A court must revoke pretrial release and order detention if, after a hearing, it finds: (1) probable cause to believe the defendant committed a federal, state, or local crime while on release, or clear and convincing evidence that the defendant violated any other condition of release; and (2) that, based on the factors set forth in 18 U.S.C. § 3142(g), no condition or combination of conditions will reasonably assure that the defendant will not flee or pose a danger to the safety of any other person or the community, or that the defendant is unlikely to abide by any condition of release. 18 U.S.C. § 3148.

## ARGUMENT

### I. There is Clear and Convincing Evidence That Kamath Violated Her Conditions of Release

Here, there is significant, incontrovertible evidence that Kamath has repeatedly violated the explicit bond condition prohibiting her from harassing, threatening, intimidating, or retaliating against any witness, victim, or officer of the Court.[2] Her months-long social-media campaign—conducted publicly, prolifically, and with escalating hostility—targets victims, witnesses, law-enforcement agents, prosecutors, and judges by name and often with identifying information. These posts include derogatory, racist, and inflammatory character attacks; baseless accusations of criminal conduct; and explicit or implicit calls for others to act against her identified targets.

Kamath's violations are not limited to verbal harassment. She has repeatedly posted images and videos obtained through criminal discovery, including depictions of victims and witnesses, thereby exposing sensitive case material and undermining the integrity of the proceedings. Her willingness to disseminate discovery materials in a retaliatory, defamatory, and harassing manner underscores her intentional disregard for the Court's processes and her at best reckless indifference to the safety of the individuals involved.

In addition to her posts, on September 11, 2026, Pretrial Services submitted a violation memoranda detailing that Kamath violated her mental health treatment obligations by failing to attend

[2] To be clear, the government does not foreclose the possibility that there is probable cause that Kamath committed a federal, state, or local crime through her actions.

mandatory counseling and failing to report as required. Again, her attitude toward this treatment and, by extension, her pre-trial release conditions, are best reflected in her social media posts where she publicly mocked the counseling as "a waste of time." Exhibit 29. Through both her words and actions, Kamath has demonstrated her conscious rejection of court-ordered conditions—obligations she agreed to honor—and a lack of intent to comply in the future.

Each category of conduct—whether her intimidating posts or her noncompliance with court-mandated conditions—on their own, would likely satisfy § 3148's standard of clear and convincing evidence of a violation. Together, however, they establish a sustained pattern of non-compliance that cannot be attributed to misunderstanding, oversight, or error. Rather, they reflect deliberate decisions to disregard conditions that Kamath, especially as a former licensed attorney, undoubtedly understood.

## II. Kamath's Conduct Proves She Will Not Abide by Any Conditions

Revocation of pretrial release is proper when the defendant has demonstrated she is unlikely to abide by any set of conditions. Here, Kamath's own words and actions leave no room for doubt. Despite active supervision, renewed participation in counseling, and mounting consequences, Kamath has nonetheless continued to post public content that is increasingly hostile, profane, violent, and threatening. She has not moderated her conduct in response to the conditions she is currently under (and agreed to), recent treatment and counseling, admonishments by the Court at prior bail hearings, or the issuance of violation memoranda. In fact, Kamath's posts indicate that she becomes enraged, at times, in response to pretrial communications or even general updates in this case. *See, e.g.*, Exhibits 23, 27, 28.

Indeed, Kamath's social-media activity is not impulsive or sporadic—it is sustained, deliberate, and escalating. She has explicitly stated that she posts "so the courts/officers get scared," a startling admission that directly reflects her intent to use social media as a tool of intimidation, including of witnesses. Exhibit 17. Her posts reveal an utter disregard for the Court, for Pretrial Services, and for the very conditions she agreed to follow. At the same time, she has demonstrated contempt for mental-health treatment requirements, labeling them useless and frivolous, thereby undermining the primary rehabilitative measure the Court imposed as a condition for allowing her to retain out of custody. Where a defendant repeatedly violates basic release conditions, even while under active

monitoring, and where the misconduct escalates rather than abates, the further imposition of additional conditions become an exercise in futility. The statute requires a practical assessment of likelihood of compliance, and the record here shows Kamath is unwilling—not merely unable—to follow court orders. No condition—whether a no-social-media order, electronic monitoring, additional counseling, or increased reporting—can reasonably assure future compliance given her demonstrated hostility to supervision and her ability to cause harm, whether indirectly or remotely.

**III. No Combination of Conditions Can Adequately Mitigate Danger or Ensure Compliance**

Under § 3142(g) and § 3148, detention becomes necessary where the defendant's history and conduct demonstrate that no set of conditions will reasonably assure community safety or compliance with court orders. That is precisely the case here. *First*, the nature and volume of Kamath's posts demonstrate she can inflict harm entirely from her home, using widely accessible online platforms. Her violations do not depend on physical mobility, making traditional restrictive conditions—curfews, location monitoring, or travel restrictions—ineffective. *Second*, her conduct has already persisted despite supervision, counseling mandates, the filing of violation memoranda, and her awareness that these publicly available posts could be viewed by the government. Furthermore, her escalation over time shows that increasing the stringency of conditions will not alter her behavior. *Third*, mental-health treatment—the primary rehabilitative condition imposed to date—has failed to curb Kamath's erratic conduct. Her public statements rejecting the value of treatment further demonstrate that additional therapeutic conditions would likely be futile. *Fourth,* Kamath has now established a stunning track record of using discovery materials to publicly target victims, witnesses, and officers in her social media posts. This demonstrates that conditions such as social-media restrictions, temporary device sequestration, or even protective orders—could not reliably prevent continued dissemination of discovery information, nor improper use of discovery information. As the defendant, Kamath's role guarantees that she will continue receiving sensitive and confidential information about victims and law enforcement personnel, especially if she represents herself, as has been suggested as a possibility. Kamath's misuse of information—sensitive or otherwise—that she obtained through discovery reflects an intentional, retaliatory use of that information. Given Kamath's persistent non-compliance, escalating public hostility, the gravity of her threats, and her misuse of discovery, the government

submits that no condition or combination of conditions can reasonably assure the safety of others or the integrity of the judicial process should Kamath remain on pretrial release.

**IV. Kamath's Conduct Poses a Credible Danger to the Community**

The danger posed by Kamath is not hypothetical. Her posts include explicit threats and graphic fantasies of violence and sexual assault directed at agents, witnesses, officers, and even their children and grandchildren. *See, e.g.*, Exhibit 16-18, 21-22. Kamath has referred to dismemberment, sexual assault, racialized degradation, and other forms of violence. *Id.* She has accused agents and victims of participating in conspiracies, corruption, and sexual misconduct. To be clear, these claims that have no basis in fact and appear entirely crafted to incite public hostility that may very well cause others to act on her entreaties.

Courts recognize that online threats and harassment targeting participants in a criminal case create a substantial danger to both individuals and the functioning of the judicial system. *See, e.g.*, *United States v. Ryan*, No. 8:26-CR-41-TPB-CPT, 2026 WL 1396545, at *6 (M.D. Fla. May 19, 2026) (recognizing that "posts about victims, witnesses, and others associated with his prosecution pose a significant and imminent threat to the administration of criminal justice" where "they are often replete with threats, attacks, and intimidation that could negatively affect the willingness of individuals—especially the victims and witnesses—to participate in this case"). Indeed, voluminous online posts attacking witnesses and officers can justify detention because they deter testimony, increase the risk of retaliatory harm, and erode the integrity of these proceedings. Furthermore, a defendant awaiting trial poses a danger to the community where there is evidence that the defendant has harassed witnesses or posted "'voluminous' social-media posts" targeting officers. *See, e.g.*, *United States v. Wagner*, No. 26-1294, 2026 WL 2333589, at *2 (6th Cir. Aug. 12, 2026). Here, Kamath's conduct meets and exceeds those standards: her posts are more than voluminous; they are also explicitly violent, racially charged, conspiratorial; and they are directed at specific individuals intimately connected to this case with the state intention of intimidating them. The combination of excessive volume and egregious content in her posts demonstrate how Kamath is a danger to the community.

Furthermore, the danger that Kamath presents is confirmed by third-party reactions. In August of 2026, representatives of Air India independently contacted the government to express concern about

Kamath's public posts—an unusual and compelling indicator that her conduct has caused real-world fear. Their unsolicited outreach demonstrates that her online activity creates an environment of intimidation extending beyond the courtroom—and literally across the ocean. In fact, courts have considered such independent expressions of fear as strong evidence of danger. *See Ryan*, 2026 WL 1396545, at *6 ("Victim 1 has made clear that he is fearful of Mr. Ryan and the harm Mr. Ryan might inflict on his family."). Given the combination of threats, exposure of discovery materials, racist and sexualized invective, and deliberate targeting of people involved in her prosecution, and even her defense, Kamath is a real danger to victims, witnesses, and the community.

## CONCLUSION

Kamath has shown that she does not take her mental health counseling seriously, and is intentionally targeting witnesses for the purposes of intimidating them, going so far as to post their names and pictures online using materials taken from discovery. The government respectfully requests that Kamath be detained pending trial.

DATED: October 27, 2026

Respectfully submitted,

CRAIG H. MISSAKIAN
United States Attorney

/s/ ____________________
MATTHEW EVANS
KEVIN YEH
Assistant United States Attorney