JODI LINKER
Federal Public Defender
Northern District of California
NED SMOCK
Assistant Federal Public Defender
19th Floor Federal Building - Box 36106
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone: (415) 436-7700
Facsimile: (415) 436-7706
Email: Ned_Smock@fd.org

Counsel for Defendant KAMATH

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>RESHMA KAMATH,<br>Defendant. | Case No.: 25-cr-371 JAM<br><br>**DEFENDANT'S OPPOSITION TO MOTION FOR REMAND**<br><br>Date: October 29, 2026<br>Time: 11:00 a.m.<br>Courtroom A, 15th Floor |

## INTRODUCTION

The government seeks remand of Reshma Kamath several months before her scheduled trial date based upon Facebook posts by Ms. Kamath which reference this case and individuals related to the case. The posts by Ms. Kamath reflect her strongly-held belief that the charges against her are untrue and that she has been treated unfairly. Many of the posts include insults and negative opinions about individuals related to this case. But these statements, posted on Ms. Kamath's personal Facebook page, are not threats and do not rise to the level of meaningfully interfering with these judicial proceedings. To be clear, there is no allegation that Ms. Kamath has communicated directly

with any witness in this case or made threats to any witness related to their involvement in the case. Ms. Kamath has a First Amendment right to speak about her case and the government's efforts to deprive her of her liberty.

The defense does not dispute that there may be grounds to convene a hearing at which the parties discuss the bounds of Ms. Kamath's First Amendment rights weighed against the need to ensure that there is no prejudice to these judicial proceedings. It may be that amending Ms. Kamath's conditions of release to clarify any limits on her right to free speech would be warranted. Indeed, this is how other Courts have proceeded when concerns have been raised about online comments by defendants. But this Court should not remand Ms. Kamath at this point.

## BACKGROUND

Ms. Kamath is a graduate of Northwestern Law School who has no criminal record whatsoever. She is charged here with offenses that carry a guideline range of around two years or less, even if she were convicted after trial. The charges relate to events on a flight from India when Ms. Kamath was transporting her elderly mother back to the United States after she had been hospitalized for an extended period in India. Ms. Kamath and her mother's voyage lasted well over 24 hours and both were exhausted at the time. Ms. Kamath first appeared on this case on November 13, 2025, at which point she was released under Pretrial supervision. She has been on release for nearly one year. During that period, she has remained in contact with her counsel and Pretrial Services, has taken part in mental health counseling through the contracted provider, and has appeared at all court appearances as required. She missed one appointment for mental health treatment, but quickly clarified with Pretrial and her provider that it was an inadvertent calendaring error. She has volunteered at community events including concerts on a number of occasions with no issues whatsoever. Ms. Kamath is also the main caregiver for her two parents, both of whom are in very poor health. Ms. Kamath's father is essentially bedridden and can only move about in a wheelchair. Ms. Kamath's mother has serious diabetes which caused multi-organ failure and left her hospitalized for a number of months. She is still recovering and breathes with the help of a breathing tube.

The government now seeks remand of Ms. Kamath based upon social media posts by Ms. Kamath on her Facebook account. The government quotes from those posts and attaches them as exhibits to its motion, so they will not be repeated herein. The posts describe Ms. Kamath's recollection of the events leading up to her arrest, her views on how she was mistreated by those involved in her arrest and the case pending against her, and racial animus she attributes to these people. The posts are sometimes demeaning and espouse views that are not shared by most, but they are protected First Amendment speech nonetheless. Importantly, nowhere in the thirty posts relied upon by the government is there a threat to harm any witness or person involved in this case. Neither can the government point to any efforts by Ms. Kamath to contact any witness directly because she has not done so.

## LEGAL STANDARD

Remanding a defendant into custody based upon an alleged pretrial release violation is only appropriate if, after a hearing, the judicial officer –

> (1) finds that there is—
>
> > (A) probable cause to believe that the person has committed a Federal, State, or local crime while on release; or
> >
> > (B) clear and convincing evidence that the person has violated any other condition of release; and
>
> (2) finds that—
>
> > (A) based on the factors set forth in section 3142(g) of this title [18 USCS § 3142(g)], there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community; or
> >
> > (B) the person is unlikely to abide by any condition or combination of conditions of release.

18 U.S.C. § 3148.

The defense contends that the posts identified by the government are protected speech under the First Amendment because none of the posts contain "true threats." The First Amendment does not protect "true threats." *Virginia v. Black*, 538 U.S. 343, 359 (2003); *Watts v. United States,* 394 U.S.

705, 707 (1969) (per curiam). "'True threats' encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." *Black*, 538 U.S. at 359. The "prohibition on true threats protects individuals from the fear of violence and from the disruption that fear engenders, in addition to protecting people from the possibility that the threatened violence will occur." *Id.* at 360, (internal quotations omitted).

Courts are permitted to regulate the speech of participants in a criminal proceeding when speech poses a "substantial likelihood of material prejudice" to an adjudicative proceeding. *See Gentile v. State Bar of Nevada*, 501 U.S. 1030 (1991); *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539 (1976). Still, "under our system of justice, a criminal defendant—who is presumed to be innocent—may very well have a greater constitutional claim than other trial participants to criticize and speak out against the prosecution and the criminal trial process that seek to take away his liberty." *United States v. Trump*, 88 F.4th 990, 1008 (D.C. Cir. 2023). Courts considering the propriety of limitations of speech by defendants have considered: (1) whether the Order is justified by a sufficiently serious risk of prejudice to an ongoing judicial proceeding; (2) whether less restrictive alternatives would adequately address that risk; and (3) whether the Order is narrowly tailored, including whether the Order effectively addresses the potential prejudice. *Id.*

**ARGUMENT**

Ms. Kamath has not violated any condition of release. Even if the Court finds otherwise, remand is unsupported under the Bail Reform Act because the Court can craft amended conditions to clarify the bounds of Ms. Kamath's First Amendment rights as they relate to any statements she makes regarding this criminal case.

The operative condition of pretrial release that the government claims Ms. Kamath violated is the third standard condition of release in this Court's bond form, namely:

> Defendant must not harass, threaten, intimidate, injure, tamper with, or retaliate against any witness, victim, informant, juror, or officer of the Court, or obstruct any criminal investigation.

ECF No. 8. The posts relied upon by the government do not violate this condition because, while many are no doubt offensive, they do not amount to threats, harassment, tampering, or intimidation of any witness or officer of the Court as contemplated in this condition. They are posts on Ms. Kamath's personal Facebook page, only viewable by individuals who seek out Ms. Kamath's posts. None of the posts contain threats aimed at any witness or officer of the Court. They reflect the frustration of a person facing charges she strongly disputes – not an effort on her part to interfere with these judicial proceedings.

Courts have been very careful to avoid infringing upon the First Amendment rights of defendants in circumstances such as these and have been hesitant to remand defendants based upon their speech. Indeed, even in the only case relied upon by the government that involved an alleged pretrial violation based upon statements by the defendant, the court did not remand the defendant into custody; instead it amended conditions of pretrial release to further clarify the limitations on speech the defendant was required to follow. *See United States v. Ryan*, No. 8:26-CR-41-TPB-CPT, 2026 WL 1396545 (M.D. Fla. May 19, 2026). In *Ryan*, the defendant sought to circumvent his computer-related release conditions and messaged another individual to "show up" at a female's "door with a fifth of henny [sic] in one hand and a meat cleaver in the other and say either way you're mine[,] take your pick." The defendant conducted searches to see if court personnel and prosecutors in his case were involved in any controversies or had any ties to Jeffrey Epstein. *Id.* The defendant also sent a message to an individual about a victim's residential location and communicated with a different person about the children of the victim and a witness. In addition, he used a social media account under a pseudonym to post about a witness and later messaged other individuals about a witness' children. Instead of remanding the defendant, the court amended the conditions of release to specify particular types of speech that were prohibited. *Id.* at *7. The amended conditions, which were crafted to address the conduct in that case in particular, read:

> [Mr. Ryan] shall not conduct any internet searches or make any posts or direct others to conduct any internet searches or make any posts about (a) the victims in this case—including, but not limited to, Victim 1— concerning their potential participation in the investigation or in this criminal proceeding or their families; (b) known or reasonably foreseeable witnesses—including, but not limited to, Victim 1 and Witness 1—concerning their potential participation in the investigation or in this criminal proceeding or their families; and/or (c) counsel in the case (other than the U.S. Attorney for the

> Middle District of Florida and the Department of Justice), members of the court's staff and counsels' staff, or the family members of any counsel or staff member *if* the internet research and posts are made with the intent to materially interfere with, or to cause others to materially interfere with, counsel's or staff's work in this criminal case, or with the knowledge that such interference is highly likely to result.[6] Mr. Ryan shall also not conduct any internet research regarding the location of the judges assigned to this case or any research regarding the judges' families.

*Id*. at *7.

Online criticism of judicial officers associated with a case is not a basis for remand, as evidenced by cases in which defendants went far beyond Ms. Kamath's comments here. For example, Roger Stone, then a defendant in a case pending in the District of the District of Columbia, posted an image on his Instagram account depicting the District Court judge in his case with crosshairs next to her head, alongside inflammatory commentary in which he accused her of bias. *In re Stone*, 940 F.3d 1332, 1335 (D.C. Cir. 2019). Instead of remanding Mr. Stone, the court changed his conditions to prohibit him from making any statements about his case or any participants in the case. *Id*. at 1338. Neither is posting pictures of witnesses a basis to detain Ms. Kamath. In *United States v. Carmichael*, 326 F. Supp. 2d 1267 (M.D. Ala.), *supplemented*, 326 F. Supp. 2d 1303 (M.D. Ala. 2004), the defendant had created a website titled "Wanted" and featuring pictures of informants and agents in his case and asking the public for information regarding the case, including addresses of informants and agents. The court refused to order the site taken down, finding that the site contained no "true threats" and recognizing the defendant's overriding First Amendment right to be free from prior restraint. *Id*. at 1296.

Cases in which a defendant's speech was cited as a basis for detention involve far more egregious and specific threatening speech by a defendant. In *Wagner*, cited by the government, the defendant had posted that the situation in Minneapolis was "kill or be killed." *United States v. Wagner*, 187 F.4th 372, 375–76 (6th Cir. 2026). He encouraged his online followers to "hunt" ICE by "sacrifice[ing]" their "vehicles." *Id*. Wagner urged his followers to "f**king fight" ICE and "put[ ] hands" on law-enforcement agents and "take their f**king guns." He suggested that he and his followers should "have a little f**king fun" by "identify[ing] every single" ICE agent, "at the barrel of a gun" if necessary. *Id*. Wagner also lamented that protestors had yet to "march on f**king Whipple"—the federal building in Minneapolis—"with guns." *Id.* He directed his followers to "[g]et

your f**king guns and stop these f**king people." *Id.* Wagner prefaced that directive by exclaiming that he was "not talking about peaceful protests anymore." *Id.* Other videos of Wagner's stressed that Minneapolis was "where ICE has come to die." *Id. See also United States v. Aron*, 904 F.2d 221, 222-223 (1990) (defendant remanded where he went to home of grand jury witness and asked him about his testimony and said he would "get even" with anyone who testified for the government). It should go without saying that nothing Ms. Kamath posted on Facebook is in any way comparable to this type of speech and conduct.

The case with perhaps the most analogous facts is that of now-President Trump relating to his online posts after his indictment in 2020 for alleged interference with the certification of the election. *Trump*, 88 F.4th at 998. In that case Mr. Trump repeatedly used his public platform to denigrate and attack those involved in the criminal case against him. The day after his initial court appearance, Mr. Trump posted on his social media account: "IF YOU GO AFTER ME, I'M COMING AFTER YOU!" He then shared with his over six million social media followers on Truth Social his view that the district court judge is a "fraud dressed up as a judge[,]" "a radical Obama hack[,]" and a "biased, Trumphating judge[.]"He labeled the prosecutors in the case "[d]eranged[,]" "[t]hugs[,]" and "[l]unatics[.]" *Id.* Mr. Trump also took aim at potential witnesses named in the indictment, including former Vice President Michael Pence, whom he accused of going to the "Dark Side[.]" *Id.* Mr. Trump asked on social media whether a potential witness against him was the type of "weakling[ ] and coward[ ]" who would "make up some really horrible 'STUFF' " about Mr. Trump in exchange for "IMMUNITY against Prosecution (PERSECUTION!) by Deranged Prosecutor, Jack Smith." *Id.* at 1000. Two weeks after his indictment and after "reading reports" that the former Georgia Lieutenant Governor Jeff Duncan would be testifying before a grand jury in Fulton County, Georgia, Mr. Trump posted that Duncan "shouldn't [testify]" and called Duncan a "fail[ure]" and a "loser" who "fought the TRUTH all the way." *Id.* at 1010. Those mentioned in these posts reported receiving serious threats in their aftermath.

Nevertheless, Trump was not remanded. The court crafted a more detailed set of restrictions on his ability to comment on the case against him and the D.C. Circuit, reviewing the District Court's order, subsequently rejected restrictions that would have prevented Mr. Trump from "targeting"

witnesses or other participants in the trial process, noting that the restrictions on Mr. Trump's speech could only focus "more directly and narrowly on comments that speak to or are about those persons' potential participation in the investigation or in this criminal proceeding." *Id.* at 1021 (noting that Trump should not be prevented from referring to a potential witness as a "liar" or a member of court staff as "hard to work with").

## CONCLUSION

The focus of the Bail Reform Act is assuring that a defendant will appear in Court and will not pose a danger to the community. The Bail Reform Act is not concerned with policing offensive speech. Ms. Kamath is not a danger to the community. Moreover, any potential concern on those grounds can be addressed by discussing possible changes to the conditions of release that do not prohibit constitutionally-protected speech. This Court should deny the government's motion to remand Ms. Kamath.

Respectfully Submitted,

October 28, 2026
Dated

JODI LINKER
Federal Public Defender
Northern District of California

/S
NED SMOCK
Assistant Federal Public Defender